United States District Court
Southern District of Texas

**ENTERED**

September 17, 2024

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **ROSEMARY SJOBERG,** | § | |
| | § | |
| *Plaintiff,* | § | |
| VS. | § | **CIVIL ACTION NO. 4:21-cv-03471** |
| | § | |
| **UNITED AIRLINES, INC.,** | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## MEMORANDUM & ORDER

This is an employment discrimination case brought by Plaintiff Rosemary Sjoberg ("Sjoberg" or "Plaintiff") against Defendant United Airlines, Inc. ("Defendant" or "United"). Pending before the Court is Defendant's Motion for Summary Judgment. ECF No. 47. Having reviewed the parties' arguments and applicable law, the Court **GRANTS** Defendant's Motion.

### I.   BACKGROUND

Plaintiff was a flight attendant ("FA") for over thirty years: first with Continental Airlines (1987-2010) and then, after Continental and United merged in 2010, with United (2010-2020). Throughout her career as a FA, she was based at Houston George Bush Intercontinental Airport ("IAH"). The terms of conditions of Plaintiff's employment were governed by a Joint Collective Bargaining Agreement ("JCBA") between United and the Association of Flight Attendants. *See* ECF No. 22-2. While the JCBA permitted FAs to engage in certain types of trip trading with one another, Section 7.I.19 of the JCBA prohibited a form of trip trading called "parking," defined as the "placement of trips on other Flight Attendant's lines to facilitate trading." *Id.* at 67.

1

Defendant claims it began receiving complaints alleging improper trip trading activity:

> United management began receiving complaints alleging that FAs were violating the JCBA by engaging in trip parking and other improper trading activities. To address the employee uproar, United and the Union each issued stern communication memos to all FAs in March 2019, emphasizing the contractual prohibition on parking, and making clear that those who engaged in it would be subject to serious disciplinary action, including termination.

ECF No. 47 at 6; *see also* ECF Nos. 47-8, 47-9.[1]

---

1 Following Defendant's Motion for Summary Judgment, Plaintiff filed a Motion to Strike several of the exhibits attached to Defendant's motion. See ECF Nos. 70, 77, and 82. Plaintiff's objections apply only to one exhibit that the Court references in the instant decision: Exhibit D-9, a System Board decision related to a grievance filed by a different flight attendant. ECF No. 47-14. Plaintiff first argues that the introduction of this exhibit is irrelevant under Fed. R. Evid. 401 because the exhibit did not involve a claim for age discrimination and the Panel there was concerned with the credibility and testimony of the employee. However, just because Plaintiff's circumstances are not identical to those raised in the Exhibit does not mean that the Exhibit is irrelevant. Indeed, because Plaintiff alleges that United accused her of "parking" not because she in fact did so, but based on her age, it becomes relevant to determine what conduct actually constitutes parking under the JCBA. *See* FAC ¶18. The instant Exhibit speaks on that very issue, providing insight on what is a violation of Section 7.I.19 of the JCBA. ECF No. 47-14 at 12-22. Moreover, the Exhibit also speaks to the validity of Defendant's purported reason for its decision to terminate plaintiff. *See, e.g., Baker v. Union Pac. R.R.,* 145 F. Supp. 2d 837, 843 (S.D. Tex. 2001)(arbitration decisions relevant and admissible because it spoke to the "validity of Defendant's articulated non-discriminatory reason for its decision to terminate Plaintiff's employment"). This evidence is both probative and relevant to the instant matter. Next, Plaintiff argues that Exhibit D-9 is inadmissible hearsay including hearsay within hearsay under Fed. R. Evid. 802. However, Exhibit D-9 is not considered hearsay because it has become part of the JCBA. It is an "established arbitral principle that 'an award interpreting a [CBA] usually becomes a binding part of the agreement[.]'" *Trailways Lines, Inc. v. Trailways, Inc. Joint Council,* 807 F.2d 1416, 1425 (8th Cir. 1986) (citation omitted); *see also Air Line Pilots Assoc., Int'l v. Delta Air Lines, Inc.,* 863 F.2d 87, 93 (D.C. Cir. 1988) (same); *Trailways Lines, Inc. v. Trailways, Inc. Joint Council,* 624 F. Supp. 880, 885 (E.D. Mo. 1985) ("where, as here, an arbitrator . . . construed a provision of the [CBA], such construction becomes part of the existing labor agreement[.]"). Exhibit D-9 clearly interprets the very sections of the JCBA that are at issue here and the admissibility of the JCBA is undisputed in this matter. ECF No. 47-14 at 12-22; FAC, Exh. B. Following clearly established case-law, Exhibit D-9 is not hearsay in this matter. As such, Plaintiff's objection to Exhibit D-9 is overruled. Regarding Plaintiff's objections to other exhibits

After sending these communications, Defendant asserts it "gathered trip trading data system-wide for all FAs and, as the investigation progressed, began to assess trip trading data at various United hubs where longer flights were scheduled. Several of the FAs appeared to have engaged in trip parking, including [Plaintiff]." *Id.* at 7.

Defendant sent Plaintiff a Letter of Investigation  ("LOI") on February 17, 2020, and held an investigatory meeting with Plaintiff on February 20. *See* ECF No. 22 ¶ 23, 24; ECF No. 47 at 7, 13. Per Plaintiff's First Amended Complaint ("FAC"), "[u]pon questioning, Ms. Sjoberg denied the allegations of 'parking' by Defendant and offered truthful responses, which explained that the trips were facilitated as honest trades and justifiable scheduling conflicts prevented Ms. Sjoberg from completing the flight and/or the trade." ECF No. 22 ¶ 29; *see also id.* ¶ 41 ("During Ms. Sjoberg's interview with corporate security, she answered their questions and provided reasoned responses regarding the trips and pairing information cited in the initial investigation letter, which supported a correct finding that the trips were not 'parked' or in violation of any company policy.").

Following the investigatory interview, in a letter dated March 5, 2020,  Defendant terminated Plaintiff, citing to parking activity in violation of Section 7.I.19 of the JCBA as the basis for her termination. *See* ECF No. 69-1 at 4 ("[T]he Company has determined you are in violation of . . . JCBA section 7.I.19."). Defendant acknowledged in its termination letter that Plaintiff's record otherwise "reflects no attendance or performance infractions." *Id.* In her FAC, Plaintiff reasserts that she "never received any compensation, benefit or brokering for these trades. Ms. Sjoberg was in compliance with

_____

(D-2, D-3, D-4, D-6), because those exhibits are not relevant to the Court's disposition of the case, we need not address them.

JCBA section 7.J.1., which authorizes unlimited trip trading." ECF No. 22 ¶ 35. At the time of her termination, Plaintiff was fifty-nine years old and a senior FA. *Id.* ¶ 19; *see also* ECF No. 69 at 6.

On October 21, 2021, Plaintiff sued Defendant for age discrimination under the Age Discrimination in Employment Act ("ADEA") and the Texas Commission on Human Rights Act ("TCHRA"), as well as for breach of contract. ECF No. 1. Plaintiff abandoned her breach of contract claims in her FAC. ECF No. 22. Plaintiff alleges she "was singled out by Defendant for investigation into alleged 'parking trips' because of her age and seniority" and that Defendant "intended to terminate her at the time it issued the February 17, 2020 LOI." *Id.* ¶ 48, 49. Plaintiff also claims that "[t]he facts and circumstances strongly indicate that United discharged these employees to intimidate other senior flight attendants into taking early retirement, given the financial and business uncertainties of the emerging COVID-19 pandemic." ECF No. 69 at 3-4.

## II. LEGAL STANDARD

Summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The court can consider any evidence in "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Crawford*, 234 F.3d at 902.

The party moving for summary judgment bears the burden of demonstrating the absence of a genuine dispute of material fact. *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001). If the moving party meets this burden, the non-moving party must go beyond the pleadings to find specific facts showing that a genuine issue of material fact exists for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

### III. DISCUSSION

Before the Court can reach the merits of Plaintiff's age discrimination claims, it must determine whether it has subject matter jurisdiction. Defendant contends that this Court does not have jurisdiction because Plaintiff's claims require interpretation of the JCBA and, therefore, are precluded and preempted by the Railway Labor Act (the "RLA").[2] *See* ECF No. 47 at 10-14.

"Congress' purpose in passing the RLA was to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes. To realize this goal, the RLA establishes a mandatory arbitral mechanism for . . . two classes of disputes." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994) (internal citations omitted). The two classes are termed "minor" and "major" disputes. Relevant to this case are minor disputes, which "involve 'controversies over the meaning of an existing collective bargaining agreement in a particular fact situation.'" *Id.* at 253 (quoting *Trainmen v. Chicago R. & I.R. Co.*, 353 U.S. 30, 33 (1957)). It is well-

---

[2] The RLA has a "preemptive" effect on claims arising out of state law and a "preclusive" effect on claims arising out of federal law. Here, Plaintiff's claims are based on both federal and state statutes.

established that "minor disputes are exclusively within the jurisdiction of RLA adjustment boards." *Carmona v. Sw. Airlines Co.*, 536 F.3d 344, 347 (5th Cir. 2008). Thus, if Plaintiff's "claims can be resolved through an interpretation of the CBA, *i.e.,* if the rights at issue do not exist independent of the CBA, [her] suit would qualify as a minor dispute under the RLA, and would be precluded from judicial review." *Id.* at 348.

Where, as here, a plaintiff relies on circumstantial evidence of discrimination, courts apply "the familiar *McDonnell Douglas* burden-shifting framework to age-discrimination claims." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012). To succeed on her claim, Plaintiff must first meet the initial burden of establishing a *prima facie* case. "Upon a showing of a *prima facie* case, the 'burden shifts to the employer to show a legitimate, nonretaliatory reason for the adverse employment action.'" *Id.* (quoting *Black v. Pan Am. Labs., L.L.C.*, 646 F.3d 254, 259 (5th Cir.2011). "If the employer meets its burden, then the burden shifts back to the plaintiff to make an ultimate showing of intentional discrimination." *Id.*[3]

Defendant contends that Plaintiff's assertions that "she had a *contractual* right to engage in the conduct that resulted in her termination" and that Defendant misinterpreted "the *contractual* provision limiting that right" makes this "the kind of case that the Fifth Circuit and courts within it have found the RLA and/or LMRA preempt." ECF No. 47 at 17 (emphasis in original). Defendant points to *Reece v. Houston Lighting & Power Co.*, 79 F.3d 485 (5th Cir. 1996) in support of its position. In *Reece*, the Fifth Circuit affirmed

---

[3] "Importantly, the TCHRA and the ADEA involve a different causation inquiry at the third stage of the *McDonnell Douglas* analysis. Under the ADEA, a plaintiff must prove that age was the 'but for' cause of the challenged adverse employment action. Under the TCHRA, however, a plaintiff need only show that age was a 'motivating factor' in the defendant's decision." *Reed*, 701 F.3d at 440 (internal citations omitted).

the district court's conclusion that Section 301 of the Labor Management Relations Act (LMRA) preempted the plaintiff's race discrimination and retaliation claims, which "turn[ed] on questions of promotion, seniority, and assignment to training programs, all of which are provided for in the CBA." 79 F.3d at 487.[4] Agreeing with the district court's preemption analysis, the Fifth Circuit determined that, because the defendant would "undoubtedly rely on the CBA as its legitimate, non-discriminatory reason for [plaintiff's] treatment," when the plaintiff "attempts to show that [defendant's] stated reason is pretextual, the CBA would have to be interpreted because [plaintiff] would have to challenge [defendant's] rights under the CBA." *Reece*, 79 F.3d at 487. Applying *Reece*, Defendant argues that Plaintiff's claims are preempted and precluded because (1) Defendant "relies on a disputed interpretation of the JCBA's definition of 'parking' as a legitimate, non-discriminatory reason for Plaintiff's termination," and (2) Plaintiff's attempt to show that Defendant's stated reason for her termination is pretextual will require the Court to interpret the JCBA. ECF No. 83 at 3-4.

Another court in this district recently resolved a very similar age discrimination case brought by Plaintiff's counsel against this same Defendant. *See Palova v. United Airlines, Inc*., No. 4:21-CV-03451, 2024 WL 1514962 (S.D. Tex. Mar. 5, 2024). Palova is a former United FA who was terminated for the same alleged activity under the same JCBA as Plaintiff. In granting United's motion for summary judgment in *Palova*, the court determined the following:

> By asserting that she was authorized by the JCBA to trade trips as she did, and further stating that United wrongfully labeled her proper trip trades as Parking,

---

[4] The Supreme Court has recognized that the standard for RLA minor disputes "is virtually identical to the pre-emption standard the Court employs in cases involving § 301 of the LMRA." *Hawaiian Airlines, Inc.*, 512 U.S. at 260.

> **Plaintiff puts interpretations of provisions of the JCBA at the center of this dispute.** For the Court to adjudicate this case and properly conduct the burden-shifting analysis associated with discrimination cases, as outlined in the Supreme Court's holding in *McDonnell Douglas Corporation v. Green*, **the Court will have to determine whether Plaintiff's trip trading constituted Parking and warranted her termination**.

*Id.* at \*3 (internal citations omitted) (emphasis added).

Plaintiff refutes Defendant's argument that the RLA preempts and precludes Plaintiff's claims under the ADEA and TCHRA. *See* ECF No. 69 at 9-10. According to Plaintiff, "[e]ven if the JCBA *might* be consulted in this litigation, Ms. Sjoberg's ADEA or TCHRA claims do not 'turn on' the interpretation of any provision in the JCBA." *Id.* at 9 (emphasis in original). Plaintiff is correct that for "the federal courts to have subject matter jurisdiction over claims like [Plaintiff's] 'does not require that the CBA be irrelevant to the dispute; either party may still use the CBA to support the credibility of its claims.'" *Carmona*, 536 F.3d at 349 (cleaned up) (quoting *Jones v. Roadway Express, Inc.*, 931 F.2d 1086, 1090 (5th Cir.1991)). However, in attempting to apply that principle to the instant case, Plaintiff "fails to recognize the distinction between reference to the CBA and reliance on it." *Id.*

In *Carmona*, which Plaintiff relies on for support, the Fifth Circuit held that, because plaintiff's "allegations of Title VII sex discrimination and ADA disability discrimination do not require interpretation of the CBA, they do not constitute a minor dispute precluded by the RLA." *Id.* at 351. But *Carmona* is readily distinguishable from the instant case: As Defendant notes, in *Carmona*, the Fifth Circuit emphasized that "[e]ven though a court would have to *refer* to the CBA to consider fully each of the alleged acts of disparate treatment, there is no disagreement about how to interpret these provisions of the CBA." *Id.* at 349 (emphasis in original). Here, by contrast, the Court

"will be required to determine if Plaintiff actually engaged in Parking" **as proscribed by the JCBA.** *Palova*, 2024 WL 1514962, at \*3. It is not within the Court's jurisdiction to interpret the parking provision of the JCBA. Thus, Plaintiff's claims are precluded and preempted by the RLA, and Defendant's Motion for Summary Judgment must be granted.

## IV. CONCLUSION

Finding that it does not have jurisdiction to hear Plaintiff's suit, the Court **GRANTS** Defendant's Motion for Summary Judgment. ECF No. 47. Plaintiff's claims are **DISMISSED** with prejudice. All pending motions are **DENIED** without prejudice as moot.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this 17th day of September, 2024.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE